[Cite as *State v. Strodes*, 2019-Ohio-4484.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 2019-CA-17 and |
| | : | 2019-CA-21 |
| v. | : | |
| | : | Trial Court Case Nos. 2017-CR-642 |
| JEFFREY LEE STRODES, JR. | : | and 2018-CR-244 |
| | : | |
| Defendant-Appellant | : | (Criminal appeal from common pleas |
| | : | court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of November, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

P.J. CONBOY, II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Jeffrey Lee Strodes, Jr., appeals from his convictions in Case Nos. 2017 CR 642 and 2018 CR 244 in the Clark County Court of Common Pleas. In Case No. 2017 CR 642, a jury found Strodes guilty of one count of possession of heroin, a fourth degree felony pursuant to R.C. 2925.11(A) and (C)(6)(b); one count of aggravated possession of a Schedule II drug, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(1)(a); and one count of tampering with evidence, a third degree felony pursuant to R.C. 2921.12(A)(1) and (B). In Case No. 2018 CR 244, Strodes entered a plea of no contest to one count of failure to appear, a fourth degree felony pursuant to R.C. 2937.29 and 2937.99(A)-(B).

{¶ 2} Strodes raises three assignments of error. First, he argues that his convictions in Case No. 2017 CR 642 should be vacated because the jury verdicts were not justified by the evidence. Second, he argues that the trial court abused its discretion by overruling his motion to continue the trial of Case No. 2018 CR 244, which the court had refused to sever from the trial of Case No. 2017 CR 642. Third and finally, he argues that the sentences imposed by the court in Case No. 2017 CR 642 were not supported by the record. We find that Strodes's arguments lack merit, and his convictions are therefore affirmed.

## I. Facts and Procedural History

{¶ 3} Late in the afternoon on August 3, 2017, Officers Freeman and Melvin of the Springfield Police Division were on patrol in a police vehicle, and while they were driving on South Center Street, they saw Strodes walking along the sidewalk.[1] Transcript of

---

[1] Asked by the prosecutor whether he was "in a car by [him]self or * * * in a two-man car," Officer Melvin testified that he "was in a two-man." Transcript of Proceedings 107:7-107:10. Officer Freeman testified, instead, that she and Officer Melvin "were in the van."

Proceedings 106:21-107:24 and 109:4-109:13.   They stopped to take him into custody because they were aware of active warrants for his arrest, but as they stepped out of their vehicle, Strodes threw up his hands, voiced his exasperation and walked away.[2]   *Id.* at 107:25-109:8.   Strodes's hands were apparently empty.   *See id.* at 156:14-157:20.

{¶ 4} With the officers trailing him, Strodes headed for his sister's house, which was also on South Center Street.   *See id.* at 139:18-142:16.   Strodes walked with his hands in front of him, and the officers were unable to see what, if anything, he did with his hands while being pursued.   *See id.* at 143:25-144:9.

{¶ 5} When Strodes reached his sister's house, he bounded up the steps and slipped inside; less than a minute had elaspsed since the officers stopped their vehicle. *Id.* at 141:12-142:16.   As Strodes entered the house, with Officer Freeman on his heels, his sister pushed Officer Freeman back, allowing Strodes to avoid the officer's grasp.   *Id.* Officer Freeman, however, had managed to cross the threshold and could observe Strodes's movements; he approached a sofa, moved one of its back pillows, and then reached behind the pillow with one of his hands.   *Id.* at 143:5-143:16.

{¶ 6} Once the officers gained entry, they arrested Strodes, and Officer Freeman examined the sofa.   *Id.* at 145:4-145:11.   Behind the back pillow that Strodes had moved, she discovered a small plastic bag containing white powder.   *Id.* at 145:12-145:19.   The officers did not search the house otherwise, lacking a warrant.   *Id.* at

---

*Id.* at 139:18-139:21.

[2] Officer Melvin quoted Strodes as saying, " '[d]on't do this to me.' "   Transcript of Proceedings 109:4-109:7.   Officer Freeman quoted Strodes as asking, " '[m]an, Freeman, why are you doing this to me?'."   *Id.* at 140:1-140:4.

146:2-146:7. Subsequent testing performed by the Bureau of Criminal Investigation established that the powder weighed 4.96 grams and consisted of heroin, fentanyl and carfentanil, the latter two substances being Schedule II drugs. *Id.* at 185:3-186:10; *see also* R.C. 3719.41(II)(B)(6) and (II)(B)(9).

{¶ 7} In Case No. 2017 CR 642, a Clark County grand jury issued an indictment against Strodes on October 24, 2017, charging him with one count of possession of heroin, one count of aggravated possession of a Schedule II drug, and one count of tampering with evidence. Strodes appeared for trial on April 10, 2018, but he left before the trial could begin. Consequently, the trial court issued a capias warrant for Strodes's arrest, and in Case No. 2018 CR 244, the grand jury issued another indictment against him on April 16, 2018, charging him with one count of failure to appear.

{¶ 8} Strodes avoided further encounters with law enforcement until July 6, 2018. On that date, officers with the Springfield Police Division saw Strodes driving on West Clark Street and attempted to make a traffic stop. Strodes did not stop, which led to a high-speed chase, but the officers eventually apprehended him. In Case No. 2018 CR 464, the grand jury issued a third indictment against Strodes on July 16, 2018, charging him with one count of failure to comply with an order or a signal of a police officer, a third degree felony pursuant to R.C. 2921.331(B) and (C)(5).

{¶ 9} On the morning of January 15, 2019, Strodes appeared for trial in Case Nos. 2017 CR 642 and 2018 CR 244. His defense counsel argued that a combined trial would be unfairly prejudicial and moved for a continuance in Case No. 2018 CR 244. The trial court overruled the motion, and as a result, Strodes entered a plea of no contest to the charge of failure to appear. Afterward, the court proceeded with the trial in Case No.

2017 CR 642, and the jury found Strodes guilty as charged.

{¶ 10} At the sentencing hearing on Feburary 14, 2019, the court sentenced Strodes to concurrent terms in prison of 15 months on the charge of possession of heroin, 12 months on the charge of aggravated possession of a Schedule II substance, and 24 months on the charge of tampering with evidence. The court, however, ordered that these sentences, the sentence in Case No. 2018 CR 244, and the sentence in Case No. 2018 CR 464 be served consecutively, yielding an aggregate sentence of six years.[3]

{¶ 11} On February 15, 2019, the court filed judgment entries in Case Nos. 2017 CR 642 and 2018 CR 244. Strodes timely filed notices of appeal in the former case on March 12, 2019, and in the latter case on March 14, 2019.

## II. Analysis

{¶ 12} For his first assignment of error, Strodes contends that:

> THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF POSSESSION OF HEROIN, AGGRAVATED POSSESSION OF DRUGS AND TAMPERING WITH THE EVIDENCE.

{¶ 13} Strodes argues that the State did not introduce sufficient evidence at his trial in Case No. 2017 CR 642 to prove each element of the three offenses for which he was convicted, and that the jury disregarded the manifest weight of the evidence in finding him guilty. *See* Appellant's Brief 4-6. His argument lacks merit.

{¶ 14} Sufficiency of the evidence "is the legal standard applied to determine

---

[3] The trial court sentenced Strodes to a prison term of 12 months in Case No. 2018 CR 244. In Case No. 2018 CR 464, Strodes entered a plea of guilty on January 22, 2019, and the court sentenced him to a prison term of 36 months.

whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} By contrast, in a challenge based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well. *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

{¶ 16} Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court

nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

{¶ 17} The first of the three offenses of which the jury found Strodes guilty was possession of 4.96 grams of heroin. Under R.C. 2925.11(A) and (C)(6)(b), the State had to prove that Strodes had actual or constructive possession of "heroin or a compound, mixture, preparation, or substance containing heroin" in amount equal to or greater than "one gram but * * * less than five grams."[4] The term "actual possession" refers to a person's immediate, physical custody of an item, whereas the term "constructive possession" refers to circumstances in which a person lacks "immediate physical possession" yet "is conscious of the presence" of an item and is "able to exercise dominion and control" over it. *See, e.g., State v. Adams*, 2d Dist. Clark No. 2018-CA-80, 2019-Ohio-1140, ¶ 19. Dominion and control "may be established by circumstantial evidence alone." (Citation omitted.) *Id.* at ¶ 20.

{¶ 18} At trial, Officer Freeman testified that Strodes apparently had nothing in his

---

[4] We refer to the version of the statute in effect from September 14, 2016, until October 30, 2018.

hands when she and Officer Melvin encountered him walking along South Center Street, and that as she followed him to his sister's house, she could not see what, if anything, he did with his hands. Transcript of Proceedings 143:25-144:9. Strodes insists that this testimony precludes the possiblity that he ever had possession of the bag of drugs found in the sofa by Officer Freeman. *See* Appellant's Brief 5-6.

{¶ 19} The jury, however, could reasonably have inferred from Officer Freeman's testimony that Strodes had the bag on his person when the officers encountered him. As Strodes walked away from the officers, he kept his hands out of view and could have retrieved the bag from a hiding place somewhere on the front of his person. The bag could, for example, have been hidden in the forward-facing portion of the waistband of Strodes's pants, because at that point the officers could only see Strodes from behind.[5] Strodes could also have retrieved the bag as he entered his sister's house, when his sister briefly obstructed Officer Freeman's pursuit.

{¶ 20} Furthermore, the discovery of the bag begged the question of why Strodes had extended his hand into the sofa. Assuming for sake of analysis that Strodes was not attempting to hide the bag, then its presence in the sofa was an extraordinary coincidence. The chemical analysis conducted by the Bureau of Criminal Investigation established that the bag held 4.96 grams of a mixture including heroin.

{¶ 21} The second of the three offenses of which the jury found Strodes guilty was aggravated possession of a Schedule II drug. Under R.C. 2925.11(A) and (C)(1)(a), the State had to prove that Strodes had actual or constructive possession of "a compound,

---

[5] Officer Freeman indicated that Strodes was wearing a white tank top and pants. Transcript of Proceedings 158:10-158:18.

mixture, preparation, or substance included in [S]chedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs." According to the chemical analysis, the mixture in the bag included two drugs listed on Schedule II: carfentanil and fentanyl. R.C. 3719.41(II)(B)(6) and (II)(B)(9).

{¶ 22} The third of the three offenses of which the jury found Strodes guilty was tampering with evidence. Under R.C. 2921.12(A)(1) and (B), the State had to prove that Strodes: (1) had "knowledge of an official proceeding in progress or likely to be instituted"; (2) "alter[ed], destr[oyed], conceal[ed], or remov[ed] * * * potential evidence"; and (3) acted with "the purpose of impairing the * * * availability or value" of the potential evidence with respect to the proceeding or investigation. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11; *see also State v. Scott*, 2d Dist. Montgomery No. 27445, 2017-Ohio-9316, ¶ 27. At trial, the State's evidence showed that two police officers approached Strodes with the intention of arresting him; that Strodes immediately sought to avoid the officers; that upon entering his sister's house, and moments before the officers took hold of him, he walked over to a sofa and extended his hand behind one of its back pillows; and that in the same place, Officer Freeman discovered a bag containing 4.96 grams of a mixture of heroin, fentanyl and carfentail.

{¶ 23} In response to this evidence, Strodes argues that although "he allegedly placed [the] drugs behind [one of the sofa's back pillows], * * * the drugs were not hidden." Appellant's Brief 6. The jury understandably reached a different conclusion.

{¶ 24} On review of the record, we find that the State presented sufficient evidence to prove each element of the three offenses for which Strodes was convicted. We find further that the jury did not find Strodes guilty of the offenses contrary to the weight of the

evidence.    Strodes's first assignment of error is overruled.

{¶ 25} For his second assignment of error, Strodes contends that:

THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR CONTINUANCE OF APPELLANT'S FAILURE TO APPEAR CHARGE IN CASE NO. 2018 CR 244.

{¶ 26} The trial court originally set Case No. 2017 CR 642 for trial on April 10, 2018.    Strodes appeared on that date but left before the trial could begin, leading to his indictment in Case No. 2018 CR 244 for one count of failure to appear.    His appointed defense counsel had seen him in the courthouse on the morning of April 10, 2018, and effective May 24, 2018, she received permission to withdraw because of the likelihood that she would be called as a witness at the trial of Case No. 2018 CR 244.    The court appointed substitute counsel on May 30, 2018, but on September 10, 2018, Strodes's substitute counsel was replaced by an attorney seemingly engaged by Strodes himself.

{¶ 27} At a pretrial conference held on October 29, 2018, the court scheduled the two cases to be tried together on January 15, 2019.    On the morning of the trial, immediately before the beginning of the voir dire, Strodes's counsel moved "for a continuance of [Case No.] 18 CR 0244," arguing that Strodes would be unfairly prejudiced because the jury might consider his failure to appear for the originally scheduled trial of Case No. 2017 CR 642 as an implicit admission that he committed the offenses charged in that case.    *See* Transcript of Proceedings 6:20-7:6.    The court declined to sever the two trials, so Strodes entered a plea of no contest to the charge of failure to appear.

{¶ 28} Following a Crim.R. 11 colloquy, the court accepted Strodes's plea in Case No. 2018 CR 244 and then proceeded with the trial of Case No. 2017 CR 642.    Counsel

did not renew the motion for severance. Here, recapitulating the argument made by his counsel at trial, Strodes maintains that the court abused its discretion by overruling the motion. Appellant's Brief 8-9.

{¶ 29} Generally, the "law favors joinder to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish the inconvenience to witnesses." (Citations omitted.) *State v. Broadnax*, 2d Dist. Montgomery No. 21844, 2007-Ohio-6584, ¶ 33. Crim.R. 13 allows a "court [to] order [that] two or more indictments * * * be tried together, if the offenses [charged in the several indictments] could have been joined in a single indictment." Under Crim.R. 14, "the court shall order * * * separate trial[s]" if it finds "that [the] defendant or the state [would be] prejudiced" by such joinder.

{¶ 30} On appeal from a trial court's denial of a motion for severance under Crim.R. 14, a defendant "bears [the] heavy burden" to demonstrate affirmatively that: (1) "his rights were prejudiced"; (2) "he provided the trial court with sufficient information [to] weigh the considerations favoring joinder against [his] right to a fair trial"; and (3) "given the information provided to the court, [the court] abused its discretion" by refusing to order separate trials. (Citation omitted.) *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 46; *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). If, however, the defendant did not renew his motion for severance "at the close of the state's case or at the conclusion of the evidence, [he] forfeits his ability to raise the issue on appeal," meaning that appellate review is limited to plain error. (Citations omitted.) *State v. McComb*, 2017-Ohio-4010, 91 N.E.3d 255, ¶ 51 (2d Dist.).

{¶ 31} To make a showing of plain error, "the defendant must establish that an

error occurred, that the error was obvious, and that the error affected his * * * substantial rights."  (Citation omitted.)   *State v. Reddix*, 8th Dist. Cuyahoga No. 107672, 2019-Ohio-2441, ¶ 7; *see also* Crim.R. 52(B).   Notice "of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."   *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 32} Arguably, the trial court should have severed the trials of Case Nos. 2017 CR 642 and 2018 CR 244.   According to Crim.R. 13, a court may order that two or more indictments be tried together if the offenses collectively could have been charged in a single indictment pursuant to Crim.R. 8(A).   Crim.R. 8(A) permits "[t]wo or more offenses [to] be charged in [one] indictment" if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."   The charge against Strodes in Case No. 2018 CR 244 bore no such relationship to the charges against him in Case No. 2017 CR 642.

{¶ 33} Nevertheless, assuming without finding that the trial court erred by overruling Strodes's motion for severance, the error did not adversely affect his substantial rights.   Had Strodes's motion been renewed, thereby preserving the issue for appeal under the abuse of discretion standard, Strodes would very likely not have been able to show that he suffered any prejudice.   For instance, a "defendant normally cannot establish prejudice" in a case in which either "the evidence of each of the [offenses] joined [for] trial [was] simple and direct," or in which "the State could have introduced evidence of one [of the] offense[s] in a separate trial of [another] of the * * * offenses[,] had

severance been granted." (Citation omitted.) *State v. Snowden*, 2d Dist. Montgomery No. 28096, 2019-Ohio-3006, ¶ 49.

{¶ 34} On April 10, 2018, when Strodes was originally scheduled to be tried in Case No. 2017 CR 642, he was not present. The evidence required to prove that he thereby failed to appear would have been as simple and direct as possible, particularly given that his absence was noted for the record at the time.

{¶ 35} Moreover, Crim.R. 14 allows a trial court to enter an order "providing * * * relief [other than severance] as justice requires" under the circumstances. Here, when the trial court refused to sever Strodes's trials, his counsel could have offered to stipulate that Strodes was summoned to appear in court on April 10, 2018, and requested concomitantly that the jury not be informed of the reason that Stodes had been summoned on that date.

{¶ 36} Regardless, Strodes's decision to plead no contest to the charge of failure to appear precludes the possibility that his rights were prejudiced in the trial of Case No. 2017 CR 642, and under the circumstances, the trial court's refusal to sever the trials did not, of itself, leave Strodes with no alternative other than entering a plea in Case No. 2018 CR 244. For all of the foregoing reasons, we find that the trial court did not necessarily err by overruling Strodes's motion for severance, but even if the trial court did err, the error was not obvious and did not adversely affect Strodes's substantial rights. The second assignment of error is overruled.

{¶ 37} For his third assignment of error, Strodes contends that:

THE TRIAL COURT ERRED IN ITS SENTENCING OF APPELLANT

IN THESE MATTERS.

{¶ 38} Strodes argues that the trial court erred by imposing the maximum terms in prison for the offenses of aggravated possession of a Schedule II drug and failure to comply with an order or a signal of a police officer.   Appellant's Brief 9.   He also argues that the trial court erred by ordering that his sentences in Case No. 2017 CR 642, his sentence in Case No. 2018 CR 244, and his sentence in Case No. 2018 CR 464 be served consecutively.   *Id.* at 13.

{¶ 39} With respect to sentencing, a "trial court has full discretion to impose any sentence within the authorized statutory range, and [it] is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.), citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus.   Even so, the "court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12." *Id.*, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37.

{¶ 40} Under R.C. 2929.11(A), a "court that sentences an offender for a felony shall be guided" by the "overriding purposes" of punishing the offender and "protect[ing] the public from future crime by the offender and others," while "using the minimum sanctions that [it] determines [likely to] accomplish [these] purposes without imposing an unnecessary burden on state or local government resources."   Accordingly, the court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution." *Id.* R.C. 2929.11(B) adds that a felony sentence "shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning

to the seriousness of the offender's conduct and its impact upon [any] victim[s], and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 41} Pursuant to R.C. 2929.12(A), in "exercising [its] discretion" to determine "the most effective way to comply with the purposes and principles of sentencing set forth in [R.C.] 2929.11," a court must consider, among other things, a list of nine factors "indicating that [an] offender's conduct [was] more serious than conduct normally constituting" the offense for which the offender was convicted; a list of four factors "indicating that the offender's conduct [was] less serious than conduct normally constituting the offense"; a list of five factors "indicating that the offender is likely to commit future crimes"; and a list of five factors "indicating that the offender is not likely to commit future crimes." The court "may [also] consider any other factors that are relevant to [fulfilling the] purposes and principles of [felony] sentencing." *Id.*; *see also* R.C. 2929.12(B)-(E).

{¶ 42} On review of a felony sentence, an appellate court may vacate or modify the sentence "only if it determines by clear and convincing evidence that the record [of the case] does not support the trial court's findings under the relevant statutes," or that the sentence "is otherwise contrary to law." *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.2d 1231, ¶ 1; *see also* R.C. 2953.08(G)(2). A sentence "is not contrary to law [if it falls] within the statutory range [and the trial court] expressly state[s] that it * * * considered the purposes and principles of sentencing [under] R.C. 2929.11 [and] 2929.12." (Citation omitted.) *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 32 (2d Dist.).

{¶ 43} Strodes argues that the trial court erred by imposing the maximum terms in

prison for the offenses of aggravated possession of a Schedule II drug and failure to comply with an order or a signal of a police officer. Appellant's Brief 9. Regarding his sentence for aggravated possession, Strodes concedes that the sentence was within the statutory range and that the trial court expressly stated that it considered the provisions of R.C. 2929.11 and 2929.12. *See* Appellant's Brief 10; *see also* R.C. 2929.14(A)(4); Transcript of Sentencing Hearing 10:13-14:21, Feb. 14, 2019. Strodes critiques the court's application of the sentencing factors set forth in R.C. 2929.12, but he has not cited clear and convincing evidence demonstrating that the court's findings were not supported by the record. Appellant's Brief 10-11.

{¶ 44} We find, then, that the trial court did not err by imposing the maximum term in prison for the offense of aggravated possession of a Schedule II drug. Regarding his sentence for failure to comply with an order or a signal of a police officer, Strodes has not appealed from his conviction in Case No. 2018 CR 464, and his sentence in that case is consequently not before us.

{¶ 45} Strodes also argues that the trial court erred by requiring consecutive service of his sentences in Case No. 2017 CR 642, his sentence in Case No. 2018 CR 244, and his sentence in Case No. 2018 CR 464. On review of a trial court's order requiring an offender to serve terms in prison consecutively, an appellate court may reverse only if it finds, based on clear and convincing evidence, "that the record does not support the trial court's findings" pursuant to R.C. 2929.14(C)(4). *See State v. Dover*, 2d Dist. Clark Nos. 2018-CA-107 & 2018-CA-108, 2019-Ohio-2462, ¶ 8-9.

{¶ 46} Although Strodes has not appealed from his conviction in Case No. 2018 CR 464, the trial court was required under R.C. 2921.331(C)-(D) to order that the

sentence for failure to comply be served "consecutively to any other prison term or mandatory prison term." *See* Transcript of Sentencing Hearing 12:14-14:12 and 15:15-15:19. Our review, regardless, is limited to the court's order that Strodes serve his sentences in Case No. 2017 CR 642 consecutively to his sentence in Case No. 2018 CR 244.

{¶ 47} At Strodes's sentencing hearing, the trial court ordered consecutive service under R.C. 2929.14(C)(4)(c). *See id.* at 15:1-15:14. According to the statute, the court had the authority to "require [that Strodes] serve [his] prison terms consecutively if [it found] that * * * consecutive service [was] necessary to protect the public from future crime or to punish [him]"; that "consecutive sentences [were] not disproportionate to the seriousness of [his] conduct and to the danger [he] pose[d] to the public"; and, that his "history of criminal conduct demonstrate[d] that consecutive sentences [were] necessary to protect the public from [the prospect that he would commit additional crimes in the] future."[6] R.C. 2929.14(C)(4)(c). The trial court made these findings. *See* Transcript of Sentencing Hearing 15:1-15:14.

{¶ 48} Referring to the factors set forth in R.C. 2929.12, Strodes argues that because his conduct in the commission of the offenses for which he was convicted "[was] not more serious than [that conduct which] normally constitutes such offenses," the trial court's order requiring "consecutive [service of his] sentences [was] not necessary to protect the public." Appellant's Brief 12-13. Yet, the relevant " 'question is not whether

---

[6] The current provisions of R.C. 2929.14(C)(4)(c) have not been changed relative to the version of the statute in effect at the time of Strodes's sentencing hearing or at the time he committed the offenses for which he has been convicted.

the trial court had clear and convincing evidence to support its findings, but rather, whether [the appellant has shown] clearly and convincingly * * * that the record fails to support the trial court's findings.' " *Dover* at ¶ 9, quoting *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). Strodes has not cited clear and convincing evidence demonstrating that the court's findings were not supported by the record, and given the constraints applicable to appellate review of felony sentencing, we find that the trial court did not err by requiring that Strodes serve his sentences in Case No. 2017 CR 642 consecutively to his sentence in Case No. 2018 CR 244. Strodes's third assignment of error is overruled.

### III. Conclusion

{¶ 49} The jury received quantitatively sufficient and qualitatively adequate evidence to support its verdicts in Case No. 2017 CR 642. Irrespective of whether the trial of Case No. 2017 CR 642 should have been severed from the trial of Case No. 2018 CR 244, the trial court did not plainly err by overruling Strodes's motion to continue the latter. Finally, Strodes has not shown that the sentences imposed by the court in Case No. 2017 CR 642 were unsupported by the record or otherwise contrary to law. Therefore, Strodes's convictions are affirmed.

. . . . . . . . . . . .

WELBAUM, P.J., concurs.

FROELICH, J., concurs in judgment and writes separately:

{¶ 50} Strodes's drug convictions in Case No. 2017 CR 642 were based on a

single bag of drugs, located in a couch, that contained a mixture of heroin, fentanyl, carfentanil, and filler; the total weight of the combined substances was 4.96 grams.

{¶ 51} As numerous cases have held, a defendant may be convicted for the simultaneous possession of two separate prohibited drugs. *E.g., State v. Holloway*, 2d Dist. Clark No. 2017-CA-91, 2018-Ohio-4636; *State v. Huber*, 2d Dist. Clark No. 2010-CA-83, 2011-Ohio-6175; *State v. Stuckey*, 1st Dist. Hamilton No. C-170285, 2018-Ohio-4435, ¶ 11 (citing cases from several appellate districts and noting that "[n]o appellate district has held that counts for simultaneous possession of two different controlled substances are subject to merger"). Consequently, there is no inherent error in Strodes's being charged and convicted for both possession of heroin and aggravated possession of drugs, even though they were mixed together in the same bag.

{¶ 52} In this case, however, Strodes was convicted of possession of 4.96 grams of heroin, the full weight of the substances found in the baggie. R.C. 2925.11(C)(6) provides that the penalty for possession of heroin is a fourth-degree felony if the amount of the drug equals or exceeds one gram but is less than five grams. The Ohio Supreme Court made clear in *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, on reconsideration, that the amount of the drug "clearly encompasses the whole compound or preparation of [the drug], including fillers that are part of the usable drug." *Id*. at ¶ 9. By charging Strodes for possession of heroin based on the full weight of the substances found, the State used the entirety of the Schedule II drugs (fentanyl and carfentanil) that were included in the heroin-possession charge.

{¶ 53} In *State v. Pendleton*, 2d Dist. Clark Nos. 2017-CA-9 and 2017-CA-17, 2018-Ohio-3199, this court questioned "the propriety of characterizing the same 133.62

grams of powder as 133.62 grams of heroin mixed with filler for purposes of determining the quantity of heroin involved, and simultaneously, as 133.62 grams of fentanyl mixed with filler for purposes of determining the quantity of fentanyl involved." *Id.* at ¶ 58. Nevertheless, the majority held that, "in the absence of a clear statutory mandate to the contrary, or any authority in the federal constitution or the Ohio Constitution, * * * we must affirm Pendleton's convictions" for both aggravated trafficking in drugs (fentanyl) and trafficking in heroin, based on the same quantity of commingled drugs.[7]

{¶ 54} Although I dissented in *Pendleton*[8] and believe *Pendleton* was wrongly decided, the doctrine of stare decisis requires this court to adhere to *Pendleton* as the law of this district. *See, e.g., State v. Skirvin*, 2d Dist. Champaign No. 2017-CA-26, 2019-Ohio-2040, ¶ 15. Accordingly, I concur in the majority opinion's conclusion that Strodes could be convicted for both possession of heroin (1 to 5 grams) and aggravated possession of drugs, even though the entirety of the Schedule II drugs that comprised the aggravated possession of drugs charge was accounted for as filler for purposes of the possession of heroin charge.

{¶ 55} Otherwise, I would have concluded, consistent with my dissent in *Pendleton* at ¶ 60-73, that Strodes could not have been convicted of both possession of heroin (requiring more than 1 gram of heroin) based on the entire 4.96 grams and also

---

[7] *Pendleton* has been accepted for review by the Ohio Supreme Court on the following proposition of law: "A Criminal Defendant's right against double jeopardy as guaranteed by the United States and Ohio Constitutions is violated when he is convicted for two drug trafficking offenses where the drugs in each offense are calculated as filler for the other offense." *State v. Pendleton*, 12/12/2018 Case Announcements, 2018-Ohio-4962.

[8] *Pendleton* involved the same panel of judges as in this case, and our opinion was rendered before Strodes's conviction.

aggravated possession of drugs based on the fentanyl and carfentanil that was included in the same 4.96 grams of drugs. Rather, the aggravated possession of drugs offense should have been merged with the *fourth*-degree felony possession of heroin offense as an allied offense of similar import. However, Strodes could have been convicted, alternatively, of both possession of heroin as a *fifth*-degree felony and aggravated possession of drugs. But for the doctrine of stare decisis, I would have remanded to the trial court for the State to elect whether to proceed on the possession of heroin charge as a fourth-degree felony (with merger of the aggravated possession of drugs offense) or to proceed on both drug charges as fifth-degree felonies.

. . . . . . . . . . . . .

Copies sent to:

John M. Lintz
P.J. Conboy, II
Hon. Richard J. O'Neill